Good morning. Tracy Dressner for Petitioner Kenan-Roberson. This case, if you look at the case, it's one of those ones where you say, what's wrong with this picture? And if you trace it backwards, you could find that everything seemed to go wrong with this case once Mr. Roberson got new counsel. That is, prior to the time Nancy Cunningham was appointed to represent him, he had entered into a plea agreement for 13 years, was in court ready to accept the plea until there was an intervening call from the prosecution in another case. They decided to hold off on that. Mr. Roberson's then-attorney files a motion, files a status report with the Superior Court saying as soon as Mr. Roberson's done testifying in this capital case, he's going to enter this 13-year plea. And then, unfortunately for Mr. Roberson, his public defender declares a conflict and Mrs. Cunningham takes over his case, and then he goes to trial and gets a life sentence. Roberts. Well, it's not quite that fast. When she took over the case, at the preliminary hearing, she made it pretty clear that she was in no position to advise him one way or another about the 13-year offer. In fact, she told him that she needed time to investigate and to make an assessment of the State's case. Isn't that correct? That's correct. There would be nothing incompetent about that, and you don't claim that she was incompetent at that point, do you? Not at that point initially. Right. Okay. And then along the way, she gets her discovery, correct? Correct. And according to Roberson, they have some conversations about the 13-year deal. Correct. And again, she says, well, you know, there's a new DA and whatnot. These things usually don't unfold until right before trial. Right? Because people haven't focused on it. Her experience was, we just don't focus on these dispositions until right before trial. Right, right. It's really hard to say that she was incompetent there, correct? Possibly. It's getting a little weaker, but I'll grant you, okay, at that point. Okay. Now we're at trial, right? We're actually on the eve of trial and there's a plea discussion. And is it your argument that at this stage of the proceeding, that this is where she is incompetent with respect to the 13-year deal? I think you can't parse it. You really have to look at the big picture. Okay. So you have to look at it from the perspective that going into the case, there had already been a 13-year, that that was agreeable to everybody. And in fact, Mr. Roberson's prior attorney and the then-prosecutor both said, this is a great deal. You should take it. Okay. So she does her discovery. She looks into her stuff. And what is she left with? She's left with a case where Mr. Roberson has been identified by a number of people as being one of the shooters in a case where there's 21 bullet casings found, that there's been 21 shots fired. And he's being charged with an attempted premeditated murder facing a life sentence. And even the then-prosecutor, the current, the prosecutor who actually prosecuted Mr. Roberson, is also telling her this 13-year deal is a good deal. So let me ask you a slightly, a slight variation of this case, but a critical variation. Suppose everything had happened the way it happened except for the sentence. Instead of a life sentence, he had been given a 16-year sentence. Would you have any basis for challenging that 16-year sentence as a result of inadequate assistance of counsel? I think one of the, certainly one of the key factors that had to be, that had to go into the determination as to whether Mr. Roberson should go to trial or not was the maximum sentence that he was facing. In fact, not just the maximum, but the question. My question is, suppose everything happened as it did, but instead of getting a life sentence, he got a 16-year sentence, or an 18-year. A few years more than what the plea agreement had contemplated. I think the issue is still the same. That is, they were taking a gamble in a case where there really was no defense. She, you know, this was an experienced public defender, or former public defender. She was not a public defender at the time. But, you know, she used her experience and judgment to decide that she thought that he had a chance of prevailing. Actually, hold on just with me one second. Because what I find troubling here is not so much, not so much her decision that or her thinking that he could prevail and get an assault with a deadly weapon or, you know, some lesser charge, or maybe even the witnesses wouldn't show, whatever. She had some strategic thinking about that. What I find troubling here is that when he gets to trial, she never really discusses the 13-year deal with him. It's sort of like it's off the table. And it really wasn't off the table. It was still on the table at the time they went to trial, at the time she had the dialogue with the judge. The 13-year deal, the 13-year offer was still on the table. And there was never any discussion by her with him with respect to whether or not he wanted to take that deal. And beyond that, not just that it has nothing to do with whether, that has nothing to do with really her assessment, her assessment that if you focus on her determination or her thinking about the case and what she could do with the case at trial, if that's your attack, then I think you have a very weak argument. The focus has to be on what she did with that 13-year deal and whether she gave him the opportunity to accept it at the end, because if you – her testimony at the evidentiary hearing was such that she testified that she never really had any further discussions with him about any deal, whether it was a 10-year deal or a 13-year offer, once that she had the conversation with the judge about – the judge said at the beginning of the proceedings, do you – have you thought about is this case going to settle? Have you considered settlement? The – I agree with you, yes. It was not – and it was not just a 13-year deal. Both the trial judge and the prosecutor both have said that they were actually open to something less than 13 years. In fact, the trial judge – and it was uncontroverted at the evidentiary hearing – that he fully expected a settlement. That is, that he thought the prosecutor was open to something less than 13 years, and Ms. Cunningham simply never did anything. She neither discussed it with Mr. Roberson nor contacted the prosecutor again to see. Which – But, ma'am, but this is a habeas challenge to the sentence, and we're limited to the issues that were raised, aren't we, before the State court. And as I understand, before the State court, the only argument made with respect to the lesser sentence, less than 13 years, was that she failed to turn over to him a 10-year bargain. And that was rejected on the facts, saying there was no outstanding 10-year offer. No, and that – I disagree. And as I wrote in my brief, in fact, in my informal – in my reply to the informal response in the State court, I said, assuming for the sake of argument that there was not – had not been a firm 10-year offer made, the fact was even the trial judge said there had been a discussion of something less than 13 years, yet she still failed to do something. So I don't see how the – that can be an unexhausted issue, especially because the magistrate in this case never made a finding that Ms. Cunningham believes to this day that a firm 10-year offer had been made. And the magistrate never found to the contrary. What he's saying is her perception was inaccurate, but she still had that perception. So what we're left with is that at the end of that plea discussion, she believed that there was a 10-year offer. The judge believed that there were still some plea discussions going on about something less than 13 years. The prosecutor had indicated during – that she was – that she was receptive to something less than 13 years, and Cunningham simply dropped the ball. The only thing we know for certain is that there was a 13-year offer on the table. There was a 13-year offer. There really is no dispute about that. That there's no dispute about. There's no dispute on the table. And at the end of the proceeding – or not the proceeding. At the end of the voir dire, I guess, is where the offer evaporates or is withdrawn technically under the terms of the offer. But up to that point, he could have accepted the 13-year offer. And there's no – there's nothing in this record that indicates that she at any point – once they got to trial, once they got to trial that there's nothing in the record that indicates that she ever had any kind of discussion with him regarding the 13-year offer. And asked him whether or not, okay, you can take this offer now or here's the consequences. That's absolutely true. And in addition, she also knew at that point that one of her reasons for thinking she might prevail at trial was that they might have some difficulty getting the witnesses in. And at that same time, the prosecutor indicated that her witnesses – that she had her witnesses ready. And so to the extent that maybe she was holding out, hoping that the witnesses wouldn't attend, at that time when the plea offer was still open, she knew that the witnesses were going to attend the trial. The other comment I just wanted to make with respect to the comment you made was that one other thing that Ms. Cunningham said that cannot be forgotten was that she said she got too emotionally involved in what happened to Mr. Roberson. And the issue that can't get lost is she believed the reason she told him not to take the 13-year deal was she believed 13 years was too excessive, given the way he had been manipulated by the prosecutor's office. But that was at the beginning of the proceeding. That was when she first came into the process. No, that was to this day. That continued throughout. The reason she was so vehement about wanting something less than the 13 years was because she believed he was being penalized by the prosecutor. And she got so emotionally involved in believing that the 13 years was too excessive that she lost sight of, well, but if you don't let him plead to the 13 years, he's facing a life sentence in a case where you have no defense and you have lots of eyewitnesses and you have 21 shots being fired. Counsel, your time has expired. We'll hear from the government. Good morning, Your Honors. Deputy Attorney General Stephanie Miocci on behalf of Respondent. In this particular case, the state court did not unreasonably apply Supreme Court precedent in determining that counsel was not ineffective in advising petitioner to reject the 13-year offer. Counsel had reasonable tactical reasons for advising her client to reject that offer, even up to the day of trial. Did she advise him at the time of trial not to take the offer? She advised him prior to trial. And I think based on the record, her opinion as to whether he should accept or reject it remained the same even up to the trial. How do we know that? The district court made no findings on that. The superior court made no findings. Well, that specific issue, you could say, was not technically or specifically raised in both the state courts or the district court. However, I think based on counsel's testimony and her declaration, she believed that her client had a chance at trial. And she also believed that the offer that was proposed to him was not fair to him in light of the fact that he had testified as a prosecution witness in the capital case and therefore would conceivably be subject to retaliatory attacks while in prison. Did she have any obligation at all when the judge asked, what about settlement? Did she have any obligation at all to ask him, okay, the offer's on the table? I think if she honestly believed that she had a chance at trial, she had talked to her client prior to that, and he had agreed that he did not want to accept that offer. As he states in his declaration, he thought that her advice to him made sense. And so, no, then she really doesn't if she believes that she has a chance at trial, and that belief is reasonable at the time. And I think based on what she knew of the case at that time, her advice was reasonable. She knew that the victim only received a minor injury and had, in fact, rejected any medical help at the scene. She had gone out and tried to locate the witnesses to the crime and had not been able to find them. She knew that the victim perhaps was not a sympathetic victim because as he testified in cross-examination, he could be considered a gangster in certain circles he was friends with. Let me ask you to approach it somewhat a little differently.  It turns out that the legal advice she gave him was perhaps unfortunate. But is that enough to show ineffective assistance of counsel? I mean, the rule, as I understand it, is you look to the situation at the time counsel acted, not on the basis of what happened later on. And I suppose there might be situations where advice of counsel to accept a plea would constitute ineffective assistance of counsel. For example, suppose counsel advises a client that he should reject the 13-year offer because as she interprets the statute, the maximum he could get would be 16 years. And in fact, she was wrong as a matter of law, and it was clear that a life sentence was possible. That would seem to me might well be ineffective assistance of counsel, not because it was a mistaken judgment, but because she failed to take into account something that was well established. But here it's a judgment call, basically, that she had to make considering all the circumstances. Was it appropriate for him to take the 13-year plea or to go to trial? You're absolutely right, Your Honor. The law is very clear that counsel's actions are to be viewed at the time that she makes those decisions and not with the benefit of 20-20 hindsight. This Court has stated in the past that a simple misjudgment or inaccurate prediction is not enough to constitute ineffective assistance of counsel. And here, although counsel may have ultimately misjudged the prosecution's case, at the time when she advised her client to reject the 13-year offer,  that he would only either be convicted of a lesser-included offense or, in fact, acquitted. And I think it's important that she give him that particular advice. It appears that she gave it to him. They had several discussions once she came on board and began to get discovery. At the preliminary hearing, she said, well, her testament before the district court was, you know, she just didn't know enough about the case. Correct. She wasn't going to tell him to take the plea. She wanted to know. She wanted to discover the facts, learn about the case, discover information, do her discovery.  So she told him at that time, you know, I wouldn't take this deal. She actually got discovery. I mean, she mentions the ballistics evidence that she received during discovery, et cetera, that also factored into her decision to advise him to reject the plea. So she waited until she got discovery. She waited until she found out more about the case and his testimony at the preliminary hearing in the capital case before she advised the petitioner to reject the plea. He asked her along the way about what about a lesser deal or something. There were some conversations between the two of them. And she responds, well, you know, we need to wait until we get closer to trial. Right. And she did, in fact. Until we get closer to trial before we can engage in any kind of meaningful discussions with the DA's office because until that time, they really don't focus on these cases. That is what her testimony was. And she did, in fact. So after that point, where does the record show that she exercised the kind of judgment that you're just talking about? I think it's kind of unclear based on the record as to exactly which points in time she has these discussions with petitioner. But I think it's clear that she had them, you know, prior to the start of trial or prior to the expiration of the 13-year offer. But as I noted, even up to the day of trial, I think that her advice was reasonable and tactical because based on what she did. According to her testimony at the evidentiary hearing, she didn't give him any advice at the time of trial. No, but her advice, I think, remained the same from the prior advice that she gave him. So she didn't really, I think, probably feel a need to re-advise him once again. Nobody asked her at the evidentiary hearing would she have given the same advice at that time. And her testimony seems to indicate that she wouldn't have. I don't read the testimony that way. I read the testimony as her saying that she believed she had a shot at trial. And as I said, her actions at the time were to be viewed from what she knew at that time. And in regards to the issue of whether she pursued a lesser sentence, I think the evidence shows that she did, in fact, attempt to get a lesser offer out of the prosecution. She approached Shauna Batten, who was a trial prosecutor at that time, and asked if she would accept a 7-year offer. And that offer was not acceptable to the prosecutor's office. So she did, in fact, attempt to get a lesser sentence for him.  No, Your Honor. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Friedman, O'scannlain, Paez